# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-508V**
Filed: August 10, 2026

| | |
|---|---|
| * * * * * * * * * * * * * * | * |
| ANGELA MURPHY, | * |
| | * |
| Petitioner, | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| | * |
| * * * * * * * * * * * * * * | * |

*Leah V. Durant, Esq*., Law Offices of Leah V. Durant, PLLC, for petitioner.
*Irene A. Firippis, Esq*., U.S. Department of Justice, Washington, DC, for respondent.

**RULING ON ONSET**[1]

**Roth**, Special Master:

On April 13, 2023, Angela Murphy ("Ms. Murphy" or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 *et seq*.[2] ("Vaccine Act" or "the Program"). Petitioner alleges that the tetanus-diphtheria-acellular pertussis ("Tdap") vaccination she received on March 11, 2021, caused her to develop Guillain-Barré Syndrome ("GBS"). Petition, ECF No. 1.

This Ruling focuses only on the onset of petitioner's GBS symptoms. For the reasons set forth below, I find preponderant evidence supports the onset of petitioner's GBS to be between March 18 and March 25, 2021 when she received a COVID vaccine.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Procedural History

The petition was filed on April 13, 2023. ECF No. 1. Following the filings of her medical records, the case was reassigned to the undersigned on September 28, 2023. ECF No. 10.

Respondent filed his Rule 4(c) Report on February 12, 2024. ECF No. 16. Petitioner filed additional records. A telephonic status conference was held on October 1, 2024, at which time petitioner's medical records were reviewed and how petitioner intended to proceed discussed.

On November 15, 2024, petitioner filed a status report, stating the appropriate next step would be to determine onset. ECF No. 26. Accordingly, she filed a Motion for Ruling on the Record on Onset ("Motion") on December 30, 2024. Motion, ECF No. 28. Respondent filed a Response on March 17, 2025. Response, ECF No. 30. On April 17, 2025, petitioner filed a Reply. Reply, ECF No. 31.

The matter is now ripe for ruling.

## II. The Factual Record

### A. Petitioner's Medical History Prior to the Subject Vaccine

Petitioner's past medical history includes chronic asthma, hypertension, obesity, and a shingles[3] diagnosis on October 17, 2018. Pet. Ex. 2 at 4, 12; Pet. Ex. 3 at 4; Pet. Ex. 4 at 70. Additionally, petitioner was diagnosed with Bell's palsy[4] on February 3, 2019. Pet. Ex. 12 at 2-3.

On March 11, 2021, petitioner presented to her primary care provider ("PCP") with asthma and hypertension. She was noted to be wheezing more and had mild asthma, mixed hyperlipidemia, and essential hypertension. Pet. Ex. 2 at 17-19. She received the subject Tdap vaccination in her right deltoid. *Id*. at 19; Pet. Ex. 1 at 1.

### B. Petitioner's Medical History After the Subject Vaccine

On March 17, 2021, petitioner presented to UPMC Pinnacle Memorial Hospital's emergency department for right shoulder pain that began around March 14, 2021. Pet. Ex. 4 at 10. She reported receipt of a Tdap shot "last week" and falling down the stairs that same day injuring her "opposite arm and ankle." The pain in her right shoulder did not begin until days later. *Id*. Petitioner reported that she had been up for the last two nights crying in pain with pain that "feels

---

[3] Shingles is herpes zoster, which is an acute, infectious, usually self-limited disease believed to represent activation of latent human herpesvirus 3 in those who have become partially immune after an attack of chickenpox. It involves the sensory ganglia and their areas of innervation, and is characterized by severe neuralgic pain along the distribution of the affected nerve with crops of clustered vesicles over the area of the corresponding dermatome; it is usually unilateral and confined to one dermatome or adjacent ones. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 842, 1675 (33rd ed. 2020) [hereinafter *Dorland's*].

[4] Bell's palsy is the unilateral facial paralysis of sudden onset, due to lesion of the facial nerve and resulting in characteristic distortion of the face. *Dorland's* at 1345.

like a 10/10 ache 'like a really bad tooth [ache].'" *Id*. She denied dizziness, weakness, vertigo, or "any other neurological problems." *Id*. at 12. Examination did not reveal any neurological deficits. *Id*. Petitioner also reported "slipping and falling while out of town" with aching right shoulder pain. *Id*. at 10, 13. Petitioner had "a slightly convoluted history of recent falls however not on the right shoulder." *Id*. at 12. Petitioner recently had "air tetanus in that arm and was uncertain if this is the cause of the pain." *Id*. Petitioner was diagnosed with osteoarthritis, given a sling, and referred to orthopedics for further evaluation. *Id*. at 13-14.

On March 18, 2021, petitioner presented to OSS Health Powder Mill for right shoulder pain. Pet. Ex. 13 at 5. Petitioner reported snowtubing over the weekend and falling several times, causing her right upper extremity "to get twisted around." Petitioner stated that the pain was not significant until the next morning. She denied numbness, tingling, or burning of the right extremity, but she had some weakness due to shoulder pain. *Id.* at 5-6. The assessment included acute rotator cuff strain. *Id.* at 6. She was told to stop anti-inflammatory medications and was given a steroid taper and hydrocodone. *Id.* at 7.

On March 25, 2021, petitioner received a dose of the Pfizer COVID-19 vaccination in her left deltoid. Pet. Ex. 14 at 3. She answered "No" to having received any other vaccinations in the past 14 days and to having ever had a severe allergic reaction to any vaccine. *Id.*

Four days later, on March 29, 2021, petitioner returned to the emergency department complaining of difficulty walking for "a few days," which seemed to have worsened the day prior with generalized numbness and tingling. Pet. Ex. 4 at 38. She reported falling when she tried to stand up one hour prior to presentation with sudden onset of right-sided facial droop. *Id.* She reported that she had been given high dose steroids for shoulder pain a few days ago and thought her symptoms were side effects of the steroids. She also reported Bell's palsy a few years ago. *Id.* On exam, petitioner had a right leg drift and facial droop. She was admitted to the hospital under a stroke protocol. *Id.* at 39, 64. Lumber puncture showed elevated protein but was negative in serum. *Id*. at 69, 219.

During an initial neurology consultation that day, petitioner reported "acute onset of arm/feet/ and facial numbness 2-3 days ago," along with lower extremity weakness. Pet. Ex. 4 at 145. Petitioner "had been feeling fine [in] the days leading up to this," and noted that she received Tdap and COVID-19 vaccinations. She reported having symptoms prior to receiving the COVID-19 vaccine. She reported having a facial droop the day before (March 28, 2021). *Id.* Petitioner explained that she fell "recently" due to leg weakness. *Id.* On exam, petitioner had slightly reduced strength in all extremities, reduced deep tendon reflexes, diminished sensation of the left leg up to abdomen, and a left-sided facial droop. *Id.* at 147. Petitioner was diagnosed with a left seventh nerve palsy, and she was again prescribed prednisone. *Id.* at 149.

Cervical and lumbar spine MRIs performed on March 29, 2021 revealed degenerative changes. Pet. Ex. 4 at 40, 55-57, 149. The hospitalist's note on March 30, 2021 included that petitioner "sought care for acute onset of [left] facial droop and numbness and associated with bilateral lower extremity weakness from waist down to feet resulting in a mechanical fall." *Id*. at 49. Her recent tetanus and COVID vaccines were noted, but she stated that "she had symptoms prior to receiving the vaccination." She also reported a history of Bell's palsy two years ago. *Id*.

On March 31, 2021, during an infectious disease consult, petitioner reported that she presented with numbness, tingling, and gait abnormality “present for about 2-3 days” that was worsening. It was noted that she had been seen in the emergency department on March 17 for shoulder pain from falling while snowtubing. She began taking prednisone on March 18 then “[n]oted the tingling occurring and effecting her gait.” Pet. Ex. 4 at 70. Her history of Tdap on March 11 and COVID vaccination on March 25 were noted. *Id*.

On April 5, 2021, petitioner reported some tingling in her feet and hands but that they no longer felt completely numb. She continued to have leg weakness, arm numbness, and worsening facial weakness. Pet. Ex. 4 at 66. Her cerebrospinal fluid analysis revealed a “cytoalbuminologic association with protein of 193,” suggestive of GBS. *Id*. at 69. Tetanus vaccine two weeks prior to the onset of symptoms was noted. The recent COVID vaccine was not noted. *Id.* On examination, petitioner had new facial diplegia with right-sided facial weakness and areflexia in her legs. *Id.*

She was transferred that day for admission to the intensive care unit at UPMC Harrisburg Hospital. Pet. Ex. 4 at 44. On April 6, 2021, the neurology record included petitioner’s husband’s report that she had been declining in the past few days with increasing weakness in her arms, legs, and face. Neurology agreed that GBS was the diagnosis based on clinical symptoms and lab testing. IVIG was ordered and petitioner’s symptoms improved. Pet. Ex. 5 at 28, 32-35. The record included that petitioner and her husband “stated that Tdap vaccine was given on 3/11, Pt became weak and had numbness in her feet within 2 days of receiving this vaccine. Pt was placed on a high dose steroid for joint pain with no relief. Pt got her Covid Vaccine on the 3/25 and woke up on 3/28 with profound facial droop and continuous numbness and tingling.” *Id*. at 124.

Neurology noted on April 7, 2021 that petitioner had “roughly 2 to 3 weeks of gradual and progressive sensory and motor deficits developing in her extremities as well as facial diplegia. This all started after she received tetanus vaccination roughly 3 weeks ago.” Pet. Ex. 5 at 108. On April 8, 2021, neurology again noted that petitioner’s “symptoms started after receiving tetanus vaccination roughly 3 weeks ago.” *Id*. at 96. The record for April 12, 2021 noted a gradual and progressive 2–3-week onset of sensory and motor symptoms and that “[s]ymptoms began shortly after receiving a tetanus vaccination.” *Id*. at 54.

Petitioner was discharged from UPMC Harrisburg Hospital on April 15, 2021. The discharge summary included: “Per husband symptoms started 7-10 days ago. Patient developed right shoulder pain in March a week after receiving her tetanus vaccine and was treated with a steroid taper. She then developed numbness and tingling in her hands and feet which progressed to weakness in hands and feet. A few days later husband noticed the patient had left sided facial droop and she presented to York Memorial and was admitted.” Pet. Ex. 5 at 13; Pet. Ex. 2 at 95.

That same day, petitioner was admitted to Encompass Health Rehabilitation Hospital of York (“Encompass”) with a diagnosis of GBS and migraines. Pet. Ex. 2 at 91; Pet. Ex. 5 at 9, 124. The admission note listed “4/05/21” as the “date[] of onset/injury.” Pet. Ex. 7 at 12. However, a progress note on April 17, 2021 included a “history of progressive weakness after she received a tetanus vaccination.” *Id*. at 186.

On April 29, 2021, petitioner was transferred to Hershey Medical Center when her leg weakness worsened to paralysis. Pet. Ex. 6 at 11. The discharge summary from Encompass included that she was initially admitted to the hospital "after 2-3 weeks of gradual / progressive sensory and motor deficits that started shortly after a tetanus vaccine." Pet. Ex. 7 at 13.

A physical medicine and rehabilitation consultation was conducted on May 3, 2021 during petitioner's admission at Hershey Medical Center. The history included that "[s]ymptoms began after [she] had received a tetanus vaccine on 3/18/21 followed by bilateral numbness/tingling of her arms/hands and severe injection site pain, and she was placed on a steroid taper." Pet. Ex. 6 at 15. Her COVID vaccine on March 25 was also noted, with worsening leg weakness and decreased sensation on March 28. *Id*. Following an abnormal EMG, petitioner was diagnosed with acute motor and sensory axonal neuropathy ("AMSAN"), a variant of GBS. *Id*. at 70, 119-21. Three more days of IVIG were ordered. *Id*. at 15, 17, 91; Pet. Ex. 7.

Petitioner was discharged from Hershey Medical Center on May 5, 2021 following improvement in symptoms with IVIG treatment. She was readmitted to Encompass for inpatient rehabilitation. Pet. Ex. 6 at 9, 91; Pet. Ex. 7 at 1615. The admission note included that on "3/18/2021 [petitioner] received a tetanus vaccination and reported severe left arm pain[5] with bilateral numbness and tingling of the hands. She was given a 9-day oral steroid taper. 3/25/2021 [petitioner] received her first dose of Pfizer Covid vaccination." Pet. Ex. 7 at 1760-61.

Petitioner was discharged to her home on June 4, 2021. Pet. Ex. 2 at 97-99; Pet. Ex. 7 at 1615.

On June 9, 2021, petitioner spoke with her PCP over the phone for follow up. Pet. Ex. 2 at 21. She reported that she was "doing okay," though progress was slow and she still felt weak. *Id*. She was to continue with occupational therapy ("OT"), physical therapy ("PT"), and speech and language therapy as an outpatient. *Id*. at 24.

On June 10, 2021, petitioner presented for evaluation at WellSpan Surgery & Rehabilitation for outpatient PT, OT, and speech therapy. Pet. Ex. 8 at 284, 319. The subjective history from the OT evaluation included status post-GBS "believed to be associated with tetanus shot exacerbated by first COVID-19 shot." Pet. Ex. 2 at 114. During her initial evaluation for PT, petitioner reported right shoulder pain with progressive weakness, pain, numbness, and tingling. She was referred to an orthopedist, prescribed steroids and had progressive numbness in her feet ascending up her legs. She was admitted to the hospital and diagnosed with GBS. Pet. Ex. 8 at 320.

On July 15, 2021, petitioner was discharged from OT with significant improvement. Pet. Ex. 8 at 85, 284.

On August 9, 2021, petitioner followed up with her PCP. Her allergy list now included "Tdvax – Guillain Barre, Influenza Vaccines – Guillain Barre." She was to continue with PT and follow up with neurology. Pet. Ex. 2 at 26-27.

---

[5] Petitioner received the Tdap vaccine in her right deltoid. Pet. Ex. 1 at 1.

Petitioner reported to the PT on August 19, 2021, that she was "[d]oing great" and walking without assistance without falls. Pet. Ex. 8 at 6. She was unable to continue with PT because of transportation issues and was discharged. *Id*. at 9.

Petitioner had a follow up with Hershey Medical Center neurology on August 23, 2021. She reported that within one day of receiving the Tdap vaccine, she had weakness mostly in her arms and some weakness and paresthesias of her face. She further reported that her symptoms were "attributed to [the] tetanus shot, but a few days into the disease, she also got a COVID vaccine shot."[6] Pet. Ex. 6 at 413. Petitioner reported "50% improved" foot numbness, "80% improved" leg numbness, and "95% improved" left-sided facial weakness; otherwise, she was 100% recovered. *Id.* She had normal sensation but still had slight eyelid weakness and a slightly unsteady gait. *Id.* at 414. Neurology noted that petitioner had been diagnosed with AMSAN based on EMG findings. *Id.* Petitioner reported Bell's palsy two years ago "as a reaction to flu shot," and the neurologist questioned whether that was a form of facial GBS given the "relationship to the flu shot given." *Id.* at 414. It was further noted that "she had obvious GBS within days of the tetanus shot." *Id*. at 415. Thus, she was advised to avoid flu and tetanus shots. *Id*. The neurologist was "not so sure about the COVID shot" because her symptoms were already underway by the time she got the COVID vaccine and progressed thereafter. *Id*.

On December 7, 2021, petitioner presented to her PCP for asthma and hypertension. It was noted that she no longer needed to follow up with neurology because she was regaining the feeling in her legs and feet. Pet. Ex. 2 at 29-31.

On June 21, 2022, petitioner returned to her PCP for follow up of asthma and hypertension. Pet. Ex. 9 at 7. The assessment that day included "[h]istory of Guillain Barre syndrome . . . [f]rom tdap and flu vaccine." *Id*. at 9.

As of June 2022, petitioner's PCP records reference a history of GBS with no lingering symptoms. Pet. Ex. 9 at 9.

Petitioner presented to a new PCP on February 6, 2023, for an annual physical. Pet. Ex. 10 at 3-9. Her allergy list included COVID vaccine, flu virus vaccines, and tetanus and toxoid vaccines, all associated with GBS. *Id*. at 5. Her history of GBS with residual peripheral neuropathy and mild facial palsy was noted. She was still taking gabapentin as needed for pain. *Id*. at 7. The examination that day was normal, but she was referred to PT for gait abnormality. *Id*. at 7-9.

On February 21, 2023, petitioner returned to her PCP for radiating left shoulder pain for five days. She had chest tightness the day prior after walking. She had full active ROM of left arm and no weakness, but she did have nausea and chest tightness. She was told to go to ER for further evaluation of a possible heart condition. Pet. Ex. 10 at 18-20. No further records were filed.

### C. Petitioner's Affidavits

[6] It is not clear based on the record who associated petitioner's symptoms with either vaccine or whether it was petitioner herself who believed there was an association.

Petitioner's first affidavit largely goes to damages and her continuing symptoms. *See generally* Pet. Ex. 11.

In a supplemental affidavit, petitioner affirmed that the day after she received the Tdap vaccine, March 12, 2021, she, her husband, and her son went to the Poconos mountains for a few days to go snow tubing for her son's birthday. Pet. Ex. 15 at 1. On March 14, 2021, petitioner affirmed "complaining of numbness in my hands and feet to my husband" but "assumed that it was just from the cold." *Id*.

Petitioner affirmed that she went snow tubing by "going up the belt escalator at the snow tubing area" but "kept falling and losing my balance which was unusual." She "kept trying" because she wanted her son's birthday "to be nice." She "made one trip down the mountain and then stayed back since I did not feel like I could take the belt escalator." Pet. Ex. 15 at 1.

After returning from the trip, petitioner's "arm was sore, unstable, with numbness of my hands and feet." On March 17, 2021, petitioner's husband took her to UPMC Memorial Hospital for the "pain in my arm." Pet. Ex. 15 at 1.

Petitioner was also planning a trip to Kentucky to help her husband's grandmother after his grandfather had been hospitalized. However, they had to cancel the trip since petitioner "could not go up and down our stairs without help and continued to experience arm pain and numbness in my hands and feet." Pet. Ex. 15 at 1. Petitioner did not state when this trip was scheduled to take place.

## III. Legal Standards Regarding Fact Finding

Petitioner bears the burden of establishing his claims by a preponderance of the evidence. § 13(a)(1). A petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he or she] may find in favor of the party who has the burden to persuade the judge of the fact's existence." *Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

The process for making determinations in Vaccine Program cases regarding factual issues, such as the timing of onset of petitioner's alleged injury, begins with analyzing the medical records, which are required to be filed with the petition. § 11(c)(2). Medical records created contemporaneously with the events they describe are generally considered to be trustworthy. *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *but see Kirby v. Sec'y of Health & Human Servs.*, 993 F.3d 1378, 1382-83 (Fed. Cir. 2021) (clarifying that *Cucuras* does not stand for proposition that medical records are presumptively accurate and complete). This presumption is based on the linked proposition that (i) sick people visit medical professionals; (ii) sick people honestly report their health problems to those professionals; and (iii) medical professionals record what they are told or observe when examining their patients in an accurate manner, so that they are aware of enough relevant facts to make appropriate treatment decisions. *Sanchez v. Sec'y of Health & Human Servs.,* No. 11-685V, 2013 WL 1880825, at *2 (Fed. Cl. Spec. Mstr. Apr. 10, 2013), vacated on other grounds, *Sanchez by & through Sanchez v. Sec'y of Health & Human Servs*., No. 2019-1753, 2020 WL 1685554 (Fed. Cir. Apr. 7, 2020), review denied, *Sanchez by & through Sanchez v. Sec'y of Health & Human Servs*., 152 Fed. Cl.

782 (2021); *Cucuras v. Sec'y of Health & Human Servs*., 26 Cl. Ct. 537, 543 (1992), *aff'd*, 993 F. 2d. 1525 (Fed. Cir. 1993) ("[i]t strains reason to conclude that petitioners would fail to accurately report the onset of their daughter's symptoms. It is equally unlikely that pediatric neurologists, who are trained in taking medical histories concerning the onset of neurologically significant symptoms, would consistently but erroneously report the onset of seizures a week after they in fact occurred"). In making contemporaneous reports, "accuracy has an extra premium" given that the "proper treatment hang[s] in the balance." *Id.* A patient's motivation for providing an accurate recount of symptoms is more immediate, as opposed to testimony offered after the events in question, which is considered inherently less reliable. *Reusser v. Sec'y of Health & Human Servs*., 28 Fed. Cl. 516, 523 (1993); *see Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd*, 968 F.2d 1226 (Fed. Cir. 1992) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 396 (1948)). Contemporaneous medical records that are clear, consistent, and complete warrant substantial weight "as trustworthy evidence." *Cucuras*, 993 F.2d at 1528. Indeed, "where later testimony conflicts with earlier contemporaneous documents, courts generally give the contemporaneous documentation more weight." *Id.*

However, there are situations in which compelling oral testimony may be more persuasive than written records, such as in cases where records are deemed to be incomplete or inaccurate. *See Campbell ex rel. Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006) ("[L]ike any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking."). The Court of Federal Claims has listed four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported by the patient; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014). Ultimately, a determination regarding a witness's credibility is needed when determining the weight that such testimony should be given. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

When witness testimony is used to overcome the presumption of accuracy given to contemporaneous medical records, such testimony must be "consistent, clear, cogent and compelling." *Sanchez v. Sec'y of Health & Human Servs.*, No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (quoting *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808V, 1998 WL 408611, at *85 (Fed. Cl. Spec. Mstr. June 30, 1998)); *see, e.g.*, *Stevenson ex rel. Stevenson v. Sec'y of Health & Human Servs.*, No. 90-2127V, 1994 WL 808592, at *7 (Fed. Cl. Spec. Mstr. June 27, 1994) (crediting the testimony of a fact witness whose "memory was sound" and "recollections were consistent with the other factual evidence"). Moreover, despite the weight afforded medical records, special masters are not bound rigidly by those records in determining onset of a petitioner's symptoms. *Vallenzuela v. Sec'y of Health & Human Servs.*, No. 90-1002V, 1991 WL 182241, at *3 (Fed. Cl. Spec. Mstr. Aug. 30, 1991); *see also Eng v. Sec'y of Health & Human Servs.*, No. 90-175V, 1994 WL 67704, at *3 (Fed. Cl. Spec. Mstr. Feb 18, 1994) (explaining that § 13(b)(2) "must be construed so as to give effect to § 13(b)(1) which directs the

special master or court to consider the medical record...but does not require the special master or court to be bound by them"). In short, "the record as a whole" must be considered. § 13(a).

## IV. Discussion and Findings of Fact

Petitioner alleges that the onset of her GBS symptoms began within 3-15 days of her Tdap vaccination, and therefore, the onset of her GBS was "no later than March 26, 2021, or March 27, 2021." Motion at 15. Viewing the record as a whole, the evidence preponderates in favor of onset of petitioner's GBS around March 18 and before March 25, 2021 when she received the COVID-19 vaccine.

Petitioner received the Tdap vaccine in her right deltoid on March 11, 2021. Pet. Ex. 1 at 1. She presented for medical care on March 17, 2021, with a report of falling down the stairs and injuring her left arm and ankle on March 11, 2021, the day of her vaccination. Pet. Ex. 4 at 10. She complained of aching shoulder pain possibly related to the Tdap but denied neurological problems. *Id*. at 10-14. There were no neurologic deficits on examination. *Id*. at 12-13. She recalled falling while out of town "and had aching pain to the right shoulder." Pet. Pet. Ex 15 at 1 (affirming falling and losing her balance while snow tubing on March 14, 2021).

The following day, March 18, 2021, petitioner presented to OSS Health for evaluation of right shoulder pain. Pet. Ex. 13 at 5. She reported falling several times while snow tubing over the weekend and twisting her right arm. She had some weakness due to pain but denied having any numbness, tingling, or burning. *Id*. She denied any other neurological complaints. Neurological examination was normal that day. *Id*. a 6. She was prescribed steroids. *Id*. at 7.

Petitioner received a COVID-19 vaccine on March 25, 2021. Pet. Ex. 14 at 3.

On March 29, 2021, four days after the COVID-19 vaccine and 18 days after receipt of the Tdap vaccine, petitioner presented reporting difficulty walking for "a few days," that worsened the day prior, with numbness and tingling all over her body that "started a few days ago." Roughly an hour before she presented, she fell when she tried to stand up. Pet. Ex. 4 at 38. She also reported being prescribed high dose steroids for shoulder pain a few days ago and thought that her symptoms were side effects of the steroids. *Id.* at 39, 64. The record from a consult with the neurologist on that day included, "acute onset of arm/feet/ and facial numbness 2-3 days ago, along with [lower extremity] weakness" but that she felt "fine" in the days leading up to her symptoms. *Id*. at 145.

Records from later in petitioner's hospitalization and subsequent treatment consistently document that her symptoms began after receiving the tetanus vaccine, with either no mention of the COVID vaccine or specifically noting that her symptoms began prior to the COVID vaccine. Pet. Ex. 4 at 145 (March 29, 2021, noted that she received Tdap and COVID-19 vaccinations but her symptoms started prior to receiving the COVID-19 vaccine); Pet. Ex. 4 at 49 (March 30, 2021, petitioner received recent tetanus and COVID vaccines but "she had symptoms prior to receiving the vaccination"); Pet. Ex. 4 at 69 (April 5, 2021 neurology noted that petitioner received a tetanus vaccine two weeks prior to the onset of symptoms); Pet. Ex. 5 at 108 (April 7, 2021 neurology noted that petitioner had "roughly 2 to 3 weeks of gradual and progressive sensory and motor

deficits," which started after she received the tetanus vaccine "roughly 3 weeks ago"); Pet. Ex. 5 at 92, 96 (April 8, 2021 progress note that petitioner's "symptoms started after receiving tetanus vaccination roughly 3 weeks ago"); Pet. Ex. 5 at 54 (April 12, 2021 progress note that petitioner had a gradual and progressive 2–3-week onset of sensory and motor symptoms and that her "[s]ymptoms began shortly after receiving a tetanus vaccination"); Pet. Ex. 7 at 186 (April 17, 2021 progress note that petitioner had a "history of progressive weakness after she received a tetanus vaccination"); Pet. Ex. 7 at 13 (discharge summary from Encompass included "…2-3 weeks of gradual / progressive sensory and motor deficits that started shortly after a tetanus vaccine"); Pet. Ex. 2 at 114 (OT evaluation status post-GBS "believed to be associated with tetanus shot exacerbated by first COVID-19 shot"); Pet. Ex. 6 at 413, 415 (August 23, 2021, neurology noted that symptoms were underway by the time she received the COVID vaccine and worsened thereafter).

Other records place onset of neurological symptoms after she began taking steroids prescribed on March 18 for shoulder pain. Pet. Ex. 4 at 39, 64 (March 29, 2021, petitioner reported that she thought her symptoms were side effects of the steroids prescribed a few days prior); Pet. Ex. 4 at 70 (March 31, 2021, the infectious disease specialist wrote petitioner was given prednisone on March 18 then "[n]oted the tingling occurring and effecting her gait."); Pet. Ex. 5 at 13 (April 15, 2021, hospital discharge summary included numbness and tingling which progressed to weakness in her hands and feet following a steroid taper); Pet. Ex. 8 at 320 (June 10, 2021, initial evaluation for PT reported progressive numbness in her feet and legs after steroids).

As noted by the physician when she initially presented on March 17, 2021, petitioner had "a slightly convoluted history of recent falls however not on the right shoulder." Pet. Ex. 4 at 12. As the records reveal, both petitioner and her husband have difficulty reporting timeframes of events, routinely using generalizations and referring to a "few days ago" or "within days" when the events were documented as having occurred weeks prior. Further, petitioner and her husband conflated the date of her Tdap vaccine on March 11, 2021 with her presentation to the orthopedist on March 18, 2021. She reported on May 3, 2021 that her "[s]ymptoms began after [she] had received a tetanus vaccine on 3/18/21 followed by bilateral numbness/tingling of her arms/hands and severe injection site pain, and she was placed on a steroid taper," with worsening leg weakness and decreased sensation on March 28 after receiving the COVID vaccine. Pet. Ex. 6 at 15. The admission note to Encompass on May 5, 2021, included on "3/18/2021 [petitioner] received a tetanus vaccination and reported severe left arm pain[7] with bilateral numbness and tingling of the hands. She was given a 9-day oral steroid taper. 3/25/2021 [petitioner] received her first dose of Pfizer Covid vaccination." Pet. Ex. 7 at 1760-61. The records incorrectly note the date of the Tdap vaccine, as well as the arm in which she received the vaccine, suggesting that petitioner and her husband conflated dates and/or are poor historians regarding times and events. Nevertheless, these records support onset of symptoms associated with her GBS after March 18, 2021.

It is not unusual for recollections to fade and become more imprecise as events become farther removed, which is part of the reason that contemporaneous records are generally afforded more weight when inconsistencies are present. The records herein reveal that petitioner is a poor historian. Pet. Ex. 4 at 12. Given the inconsistencies regarding onset throughout the record, I find

[7] *Supra* note 5.

the contemporaneous medical records to be the most reliable on this issue. *Cucuras*, 993 F.2d at 1528.

To that end, while some of the records later in her treatment course place onset within a day or two following the Tdap vaccine, the majority of the contemporaneous records equate onset with starting the steroid she was prescribed on March 18, 2021 but before she received the COVID vaccine on March 25, 2021. Pet. Ex. 5 at 124; Pet. Ex. 6 at 413. Petitioner also denied neurological problems when she presented on March 17 and 18, 2021. Pet. Ex. 4 at 10-14; Pet. Ex. 13 at 5-6.

Based on the foregoing and viewing the record in its entirety, preponderant evidence supports the onset of neurological symptoms around March 18, 2021 when petitioner was prescribed steroids but before her March 25, 2021 COVID vaccination.

Furthermore, while not conclusive in proving causation, it is worth noting that several of petitioner's medical records associate her GBS with the Tdap vaccine, with exacerbation of her GBS following the COVID vaccine. Pet. Ex. 2 at 26-27, 114; Pet. Ex. 6 at 413, 415; Pet. Ex. 9 at 7, 9; Pet. Ex. 10 at 3-9.

## V. Conclusion

Upon review of the record in its entirety, I find that preponderant evidence supports the onset of petitioner's GBS as around March 18 but before March 25, 2021.

The parties shall confer and file a joint status report within thirty (30) days, advising how they wish to proceed.

Accordingly, the following is ORDERED:

> **By no later than Wednesday, September 9, 2026**, the parties shall file a joint status report, advising how they wish to proceed.

**IT IS SO ORDERED.**

**s/Mindy Michaels Roth**
Mindy Michaels Roth
Special Master